Number 06-2468. Mr. Patrizio and Mr. Kravitz. May it please the Court. Good morning, Your Honors. My name is Steven Patrizio and I represent Arteaga Green and I'd like to reserve three minutes. That's fine. Thank you. I would like to begin on the 803-1 issue and just note that at page 510A of the appendix, the Court, I believe, misunderstood the time element here. He states there that he believed that the lapse between the event and the actual recordation of it was 15 minutes and that's indicated that it was actually 50 minutes. It was actually 50 minutes. And I think that the Court, when it made its determination of admissibility, apparently seemed to rely upon the 15 minutes. And I would just further note that the case that the government relies upon, Mitchell, essentially said that 40 minutes was too long or 45 minutes, I think, was too long of a period of time. It wasn't objected to in the district court, so... It was, Your Honor. And also, wasn't Mitchell, to some extent, dicta? Arguably, it could be. But actually, Judge Cowell's question is even more pertinent. Was the objection made? In Mitchell? No, here, that there was a violation of 803? Absolutely, Judge. I argued that it was too late. I argued that by the time the confidential informant got back to the post, took the equipment down and whatever, that... And the government actually quotes my statement in there that it was too late. Additionally... Well, in the district court, you... They put this in evidence under 803-1. You argued in the district court that it was not a violation of 803-1? That it was, rather? That it was. The judge... I went in one direction. The judge said, get back and argue 803-1. And then I did. And not only did I argue... At the time, it went into evidence. Absolutely. Absolutely, Your Honor. The government actually indicates my comments there... Is there a violation of the record on that? Sorry. It looks like 505A. The defense objected to the omission of the statement on the ground that it was too late, that the government should have examined the CI about the statement while he was on the stand. The government specified the statement was not being offered for impeachment or as a prior inconsistent. But also, I argued that it was too late in the sense of going back to record the statement. When the CI left, the time element, Your Honor, was not even really clear because of all the problems with the government's evidence. No, I mean, at the time that the government introduced this evidence of what his statement was 50 minutes after the event at DEA headquarters or wherever they were, you objected to that going into evidence based on that it wasn't an excited utterance or whatever? At first, Judge, I objected that it was really proper impeachment and an inconsistent statement. And then I went... When the judge told me to argue 803-1, then I made the statement that it was a long time between when it happened and I can remember and I was fine for the record. Is that on 505 where you said that? I think it was, Your Honor, and I can check it very quickly. I thought we were on plain error on this 803 issue. I mean, the government acknowledged in their brief that I objected. Maybe... That is my understanding, but we're just trying to dial it down. It may be that what you said was it's too late to have the under 803 to come in is what we're recalling from the record. My understanding of this record is that you absolutely did not object to it at the time it went in and that we were on plain error. Judge, I... I will find it when I see it. Yeah, that's fine. I will find it. We'll let you do that and we'll get you back on rebuttal on that. So the open question is, was an objection made timely to bring this into play or do we have to review it under plain error? It really goes to our standard of review. And what I would say, I believe that the government was totally disingenuous when they attempted to elicit that statement because they argued even in their closing argument that it was really impeachment and an inconsistent statement. And it happened right on the throes. And if you look at the portion where the judge addresses it, she got done cross-examining at lunchtime, came back, and that was the first thing that she wanted to do. You have a very good argument that 50 minutes isn't contemporaneous under 803.1. And so we're just... Go ahead. Would you acknowledge, though, that if you did not object to it, that it's in the record as substantive evidence and that if it's in the record, the government could also argue it in summation that what was said in this utterance? I believe I objected. But if you didn't object... Yes, sir. ...that it was legitimate for them to argue that? Yes, sir. Okay. Yes, sir. Then why don't we go on to the... Yeah, counsel, Judge Ambrose brought up a good point. You have a good argument, I think, here. Why isn't this harmless error? Because, Your Honor, if you look at the totality of this trial, and I brought the... There seems to be a lot. You've got DEA agents, fakes. If I brought up the totality of all of what I believe were errors, this case was a trial by ambush as it relates more specifically... Well, counsel, we only have a few issues before us. But the Brady issue, Your Honor, is interspersed everywhere. It begins with when the government, if you look at what the government's evidence was in this case, they put an agent on the stand to identify my client's voice. And I objected from the very beginning in terms of the statement. Maybe the way to put it together here is it seems to me of the many issues you've argued, the 803-1 issue stands out along with the Miranda point. And then we'll get to Judge Chigares' point, which is, okay, assume you take all of that out. Wasn't the evidence so overwhelming? So maybe if you'll just deal with the Miranda point about showing him the surveillance tape before they gave him those Miranda warnings, then we'll go to harmless error with respect to everything. I think the tape in Miranda is very clear. The agent showed him a tape from a different date. It was April the 6th. At the suppression hearing, he denied that there was a date. It came up again at trial. I thought it was April 18th. April 6th on the tape. But more importantly, Your Honor, what the government did here in this case was, regardless of why they elected not to indict him on other events, this was 404B material that denied me the opportunity to strategize and effectively impeach the agents who testified. They attempted to convict this man, not with a confrontation of a confidential informant. They put an agent on who said he had ten prior contacts with the witness to identify his voice. If I had had the Brady material of the other events, it was clearly 404B. How was the other events Brady material? Brady for the following reason. How were they? The district court did not believe three of the five events that they elected to enhance my client with, with relevant conduct, did not believe that the evidence even met the preponderance standards, let alone prevail. Just going back for a second, what I've asked you to address was the Miranda issue. Let's get to the Brady issue in a second. The Miranda issue, your position is that they showed him this tape before they Mirandized him and that he made certain expressions and bodily movements at that time and that they used those expressions and bodily movements as evidence of his guilt of the crime, even though at that time he had not been Mirandized. That was your argument, as I understand it. Yes, sir. Okay. Now, I think that's what Judge Ambrose... Now, your position is that was a violation of Miranda. It was designed... First of all, if you look at how they got him, they didn't arrest him on a warrant. They brought him in on an alleged case, which was a hoax, and the agent admitted that. Then what they admitted was they wanted to really talk to him, and now really talking to him, what did they do? They showed him something that, again, there was really no clear acknowledgement. He made certain statements and the... Well, is it a violation of Miranda to show him a tape to induce him to have... Absolutely. ...to result in him making bodily movements, which your position is are testimonial and communicative. Your Honor, I believe it's a no-brainer what the agents did here was clearly improper. Yes, sir. Can I put this into perspective? I understand that Agent Hughes testified about it. It was mentioned in the opening, but you didn't object... Did you object to this? I think we're reviewing this under plain error, aren't we? There's no objection, was there? At least... Oh, at this... No, Miranda, no. No. Okay. That is correct. But, again, I state to this Court, if you look at the combination of what was done here... I'm just worried about the standard of review. I understand. We're on plain error as to Miranda on matters... I think we're on plain error as to a lot of things, Your Honor. Well, that's a pretty tough standard of review. You have to show... Let me ask you this. They indicted him for the May 202 transaction. Yes, sir. Even though they waited over two years to indict him for it. Almost three, yes. And the jury found that... Yeah, that was him in that video selling the tapes, selling the drugs. But because of, Judge, the prejudice of the history of drug transactions that they kept saying over and over again, of which they did not give me any gradient, I even requested the materials where the Court shut me down at one point on that. And that, to me, is the critical piece of this man's... We're back on Brady. Your position is they convicted him by having the officers testify that they could identify this very difficult image on the tape, on the video, because they had seen him on other videos and they knew his voice and they knew his identity. When, in fact, the material that we got after the trial and at the sentencing actually disputes that. For instance, Agent Hughes testifies on the very first event in November that, well, I wasn't there, but I heard the conversation. And, in fact, what happened was that one of the tapes after discovery was given, after that sentencing, clearly shows that they were asking the informant, well, where is he, did he leave? And the informant says he had blue pants on when the agent testified, even at the sentencing or at the sentencing hearing, that he believed the defendant had black leather pants. We're back on the Brady violation situation. Well, Judge, I hate to go back to that, but I think it's all-encompassing here when it goes, when you just said they identified him by prior transactions and by prior events. Under Brady, the government doesn't have to give up information... Unless it exonerates. And this information does, I submit, respectfully. No, what they did is they brought up information at sentencing that you said had it been brought up at trial, you could then have cross-examined and shown that had that information been brought up at trial, that there were inconsistencies, but does that necessarily... Not necessarily inconsistencies, Your Honor, but the agent testified that he was able to make, he had ten prior encounters with the defendant. At the suppression hearing, I relied, the government never said we have all this 404B material. What the government said was, at the suppression hearing, I asked Agent Hughes, what was your first contact with the defendant, December, when you arrested him? Believing that that was going to be the answer, on direct examination, the prosecutor brings out ten prior events. I should have been... Well, Your Honor, as I understand it now, is beyond that that Brady would have exonerated, Your position is that it's impeachment material of the agent, it's Giglio. Precisely because... It would have shown that the agent's testimony was not trustworthy, so it's beyond exoneration, you're asking for Brady material. Absolutely, because, Your Honor, when they did it at sentencing, Judge Slee disregarded three of the transactions because the defendant was not even present. Yet, this is where the agent testifies history of drug transactions. I could have proven that as well as that would have tied to the actual event that they tried him for. More importantly, Your Honor, when I produced the CI, and then prior to that, I asked when Agent Hughes was on the stand, well, do you have that report? I didn't bring it here. I asked him, well, can you bring it tomorrow? The judge shut me down. I think the judge was an unknowing, unfortunately taken advantage of by the government here. The judge shut me down about getting those materials because it would have shown that the agent was not only not accurate, but wrong. But doesn't the agent have to testify at trial in order... He did. He testified that he... He testified at trial as to the prior purchases. Yes, as a prior history of drug transactions. Then you could have cross-examined him on that, right? I did, but the judge would not allow... I asked the agent when that happened. I said, well, and tomorrow overnight, will you bring the files that show those prior transactions? A government objected, and the judge... What was the context for that? Wasn't it just the voice recognition? It really went beyond that because it was initially... This is where the government, I think, was playing fast and loose. My understanding was it was for the purpose of identifying the voice. How many times had you previously heard that voice? I've heard it X number of times. But then it moved to maybe I had to bring it out because I challenged it relying upon the agent's testimony at the suppression hearing that his only contact with the defendant was on the day of arrest. I was snookered here. If I had had that material before, number one, I could have elected possibly a different strategy, but then I could have delved into when, okay, the ten prior times. First of all, he testified to an event about a deceased agent. Three of the times the defendant was not there, there were four other people. He even in the trial said that there was another CI unrelated to the one I produced. All right. When you come back... Did you reserve time for... I did. When you come back, one of the things we want you to address is the harmless error point that Judge Chigaris has asked you about because the question is even if there are problems here, wasn't the evidence overwhelming against him? And also, where in the record is your sense of objection? Mr. Kravitz. Good morning, Your Honors. May it please the Court, Robert Kravitz on behalf of the United States. Your Honors, I'd like to start first with the prosecutorial misconduct claim. Judge Cowen, it was not Mr. Patrizio is not arguing that it was a Miranda violation. He's arguing that in bringing that out in the closing argument that the government committed prosecutorial misconduct. In the case that cited... Let's just go back to Miranda for a second. We're not going to lambaste you for prosecutorial misconduct. You could argue that it was one, knowing that it was a Miranda violation, should not have, as a tactic, brought it up during summation. But leave that aside for the moment. Showing a person a tape and not giving that person Miranda warnings and then testifying about how that person reacted to the tape, is that not a violation of Miranda? It's not, Your Honor. And I'd cite to Your Honor the case of U.S. v. Johnson, which is a 2002 decision that was offered by Your Honor. And the precise error here that's claimed is that it was a violation of Doyle. What did I decide in Johnson that somehow helps you? Your Honor, it was interpreting Doyle. And in the subsequent cases that Doyle upheld, that it's only when it is post-arrest, post-Miranda, when the government has induced a defendant to remain silent. On this situation here, the person was in custody, was he not? He was in custody. And they showed him the surveillance tape. That is correct. He had certain reactions to that surveillance tape, and those reactions were testified to at trial by those who observed them. That's correct. In effect, what he was doing was making a, quote, statement without having been given his rights under Miranda. There was conduct, Your Honor. But, again, I would get back to the point. That's not the issue that's raised here. It's not a Miranda claim. Oh, it is raised here. It's before us. No, because it's clearly before us. If you had testimony by agents at trial concerning commutative and testimonial conduct by him before he was Mirandized, it certainly is a violation of Miranda of the Fifth Amendment. And it appears that the DEA agents did this intentionally and specifically. As a matter of fact, there was an assistant U.S. attorney that was present at some of this that induced this type of conduct and sought to get this reaction from the defendant. So the question is, if we decide that his Miranda rights were violated and part of that testimonial and commutative type of conduct that went into the record was in violation of his Fifth Amendment, aren't you in trouble on this appeal? I don't think so, Your Honor. And, again, I would just get back to the argument that the defendant has raised on appeal. And that was the argument was, is once you have Mirandized someone, you cannot use their silence against them. And the government agrees with that. I agree with that point made by Mr. Patrizio. The problem with that analysis, and there have been cases subsequent to Doyle, is that if you are prior to giving the Miranda warnings, the government has not induced the defendant to remain silent. So, therefore, you can bring in expressions of conduct. But the government is doing Miranda. Isn't this an interrogation under Ennis? I mean, he's certainly in custody, Your Honor. But is it not an interrogation? It is an interrogation. It's a custodial interrogation. I'm sorry. I interrupted Judge Cowan. No, no. Well, if it's an interrogation under Ennis without being Mirandized or even some of the information used after he was Mirandized but was what originally invoked prior to his being Mirandized, all of that testimony is improper. But, again, Your Honor, we don't have any – we don't have the defendant appealing from the suppression ruling. We have the defendant arguing that what the AUSA said in her summation constituted prosecutorial misconduct. And in the defendant's brief, the argument is that it's because silence was induced that you can't refer to somebody's silence. This is in the post-arrest pre-Miranda stage, and I would argue that there are cases that are exactly on point on this issue. And, Your Honor, Johnson is not cited in our brief. But in Johnson, one of the inquiries that came up at trial was the defendant had a jacket on. And there was an initial question about the defendant wearing the jacket because there were drugs that were found inside the jacket. So the questions that were asked at trial went directly to the officer. Did the defendant have a jacket on when he came in? When the defendant left, did he have a jacket on? There were questions that were going to conduct, not necessarily – That's pretty different. I mean, here you've got people playing a pretty hard game in order to try to get a statement from this person, and yet they forgot the prerequisite to doing what they have done in this custodial interrogation. That is to give the warnings under Miranda. It would seem that your better argument with regard to that might be that there was harmless error. If there's error, and they should not have referred to it in summation, it doesn't make any difference. It's harmless. Well, I do think it's harmless. And just one other thing with respect to the record, Your Honor. We're going to have you tell us in a second why you think it's harmless. And if I can just add real quickly from the record, in terms of Special Agent Hughes' testimony, when the defendant did come in, he did tell the defendant to just remain silent and to watch the tape. And afterward, we also have a situation where the defendant – then why would the prosecutor at trial – I mean, you would know to stay away from that, wouldn't you? If somebody said, you go in there and you watch the tape, just stay silent. Okay, let's just say that one aspect of Miranda was sort of given. You have a right to remain silent. And the person says, no, you have a right to remain silent. Why in the world would the prosecutor then comment on this person's reactions? Well, I think at the end of the day, the defendant was Mirandized, and he did wave Miranda, and he did give us a warning. But we're talking about what happened before he was given the Miranda warnings. I understand that, Your Honor. And I think that's where we pivot into the harmless error analysis on this particular issue. Well, how could it be harmless error when the only real evidence you have is that one cell in O2 and all the other evidence against him is all the evidence that the agents are bringing in, some of it in violation of 803 of his present sense impression. And there's no case that says a statement made an hour – almost an hour after the event is a present sense impression. You have this one cell, and it's a very dubious cell because the agents have to testify based on other cells that they recognize this very difficult, poor image on the video as being the defendant. So why is the evidence here so overwhelming that it's harmless error? It's a very close case, as I see it. Your Honor, I would disagree that it's close, and I'll explain why. First of all, it's not just identification of the video that was inside the clock radio. You had at least two different DEA special agents testify that they were there that day. Special Agent Miller is sitting in the surveillance van approximately 25 to 30 feet away from the residence. He had seen the defendant in the past. He sees the defendant come in. You also have the informant wearing the body wire, which the agents are monitoring contemporaneously. And most importantly of all, Your Honor, the defendant confessed. Yeah, but the point is this. No, the confession would not have gone into evidence in this case based on a proper objection. But the point is the confidential informant would have backed the defendant. So that was the evidence that was crucial here, the confidential informant and the 803 statement by the confidential informant. If the confidential informant said it wasn't him, the defendant denied it, and what you have is a couple of DEA agents who are trying to make a case. That's not a close case for me. That's a not guilty verdict. Your Honor, and I think this is where it's important to look at the record with respect to the testimony of the confidential informant, which is around 489 in the record to 502, I believe, and I can get the exact sites for Your Honor. The confidential informant was significantly decredited throughout the course of his testimony, and I think that became a jury question. At one point, Your Honor, with reference to the record, Ms. Bird asked the confidential informant, well, that was the defendant who entered the residence, and he said yes, and a couple of minutes later he backtracked. And then you also had the confidential informant saying, well, I bought crack from Mr. Green on two prior occasions. I just didn't buy crack from him on this particular date. But he said what they were convicting him for, for the 2002 violation, that was another guy, Tex or whoever it was. He denied it was the defendant on that 02 sale, which the indictment was for. The violation of 803 by the government put this over the hill for the government, in which they got the confidential informant's statement, which was clearly improper as far as I'm concerned. And without that statement under 803, together with the violations of this defendant's amendment right, made it a case for the government. Without those, do you think the government would have won this case? Well, Your Honor, with respect to the confession, the confession was post-Miranda. The confession was post-Miranda. That was post-Miranda, but under Ennis it's still not proper if he gave statements prior to being Mirandized, and the statement following the Miranda is a confession. It won't go into evidence. It's part of the whole violation of this Fifth Amendment right under Ennis. Well, Your Honor, again, with respect to the tape that were introduced in this case, the tape of the clock radio shows the defendant meeting with Mr. Brown. Poor quality tape. I would disagree with that, Your Honor. Even the government admitted it was a poor quality tape. The clock radio tape, you can see a profile of the defendant. The defendant is sitting in the courtroom. The jury, the 12 jurors are there. They're able to see that tape and see the defendant. Never saw his face. You see his profile. You do, Your Honor. You see the profile of the defendant. That's a little rugged to say that's the basis for a clean ID, isn't it? The profile, Your Honor? Well, you also have, but you don't only have the profile. You have the testimony of Special Agent Hughes who has heard the voice on 10 different occasions. You have the jury actually hearing the voice of the defendant at trial, and based on what Special Agents Miller and Hughes said, that's the defendant. You have the defendant sitting there, and the jury, as the finders of fact, being able to look at that defendant, compare it with the tape, and make their determination. But then what the jurors see is that this was a person who, when he saw the tape, had a very significant reaction indicating that he was that person. And you're not supposed to put that in. Because he did not have Miranda. I mean, the point that Judge Callan's making is when you add these things together, it doesn't look good. It looks as if the evidence, the government prosecutor believed that this type of evidence needed to come in in order to seal the deal as to whether this was indeed the actual person who was on the tape. My point with respect to that, Judge Ambrose, if you look at the record, pages 560 to 568, Ms. Bird's closing statement, she spends eight pages of the transcript discussing the confidential informant's testimony, going through the different reasons why it has been discredited. She spends only three-quarters of one page discussing the present sense impression that was introduced. In the time you have left, why don't you discuss the 8031 issue? Certainly, Your Honor. Our position, and I know that this is a- You can't say 50 minutes is contemporaneous, right? Well, Judge Sleet found that it was sufficiently contemporaneous. The only case law and support that I have, Your Honor, and I realize this is a- What case can you find that says that 50 minutes is okay? None. The best I have is Blakely from the Seventh Circuit, which we cited in our brief but did not go into detail. And that was how long? It was 23 minutes, Your Honor.  Here you could have had contemporaneous, could you not? I mean, what happened was they took him down to the station, they cleaned up- And debriefed. And debriefed. What happened first, and it's in the record from I believe Special Agent Hughes' testimony, is the CI comes out of the house with the drugs, gives it to the agents. They said, you forgot the clock radio. Go back inside and get it. They go back inside, get the clock radio, come back out, and now they drive from Wilmington to the DEA office, which is approximately 10 to 15 minutes away in Newcastle. And at that point, once he sits down, he does sit down and write out the statement. Well, yeah, but the debriefing is a problem too, though. Then you debrief and then you send him with a pen and paper. I think oftentimes it would be a problem. The only difference here, and this was my reference to the Blakely case from the Seventh Circuit, is the further time that elapses, you better have some indicia of reliability or some corroboration. The corroboration in the Blakely case was the FBI had a running wire in the storefront in Chicago, and they caught that statement on tape. Here the corroboration is the body wire is running the entire time throughout the deal. You have the CI who's meeting with the defendant on tape. You have the agents doing surveillance, seeing the defendant go inside the building. What you're talking about is a very limited exception to hearsay. And the rule says, or immediately thereafter. Now the question is, and the court has said that means contemporaneous, which means smack on it. And Blakely has said, okay, we're going to stretch that a bit and say 23 minutes. And we've seen cases with less than that, 8 minutes up to 23 minutes in Blakely. Where have you ever seen 50? We haven't, Your Honor, and I think that the only. In fact, one of our cases has said that, albeit perhaps in dicta, that 40 minutes is probably too long. That was, and I believe, and it goes back to the point I was making before, is you have to, if you're going to have that much time elapsed, and you're giving a statement which is going back to what a present sense impression was of perceiving the event, then you better have the reliability and the corroboration. And this court has said that corroboration is one aspect of the present sense impression exception. Let me ask something. Go ahead, Bob. I have never invoked it or suggested to my colleagues in conference, but in this case the government's conduct to me is so outlandish that why shouldn't we decide this case as a sanction against the government, reverse it, just based on the conduct of these DE agents, who to my view of this record are a bunch of cowboys, what they did. And not only did they do it in violation of the Fifth Amendment, but they did it with the help and the cooperation of an AUSA, which is unbelievable. They purposefully induced him to testify through his motions and did this in a manner which were unconscionable. Then they used this rule, they sold it to the district court, which is clearly inappropriate, and they piled it on in such a way that it makes me a little ashamed of what went on here with law enforcement officials. And why wouldn't we be within our rights to, as a sanction, reverse this conviction and make you try it again, ruling out any of this conduct which we find to be a violation of the Fifth Amendment? Well, Your Honor, I would respectfully disagree with the characterization, and here's why. With respect to the- You don't think his Fifth Amendment rights were violated? Your Honor, I don't think that issue has been raised because the defendant- I feel it's clearly before this court. There's no question. And if it isn't objected to- Why is it a clear error? I would want a clear error. Constitutional magnitude, and I find this a very close case. I find you won this case by putting into evidence the confidential informant's 803 statement, which really is something that should have been used to cross-examine him under 636. So if we find that this violation occurred, what would be inappropriate to us to reverse this case, just pure and simple, as a sanction against the government, which is something that can't be done? Well, first of all, Your Honor, with respect to that statement, and there is testimony in the record, that statement was found over lunchtime and it was faxed over during lunchtime. From the record, there is no basis to find that the government was playing fast and loose with respect to that statement until Mr. Brown got off the stand. The record shows that that was an innocent mistake. And the record also shows, with respect to the date discrepancies, in terms of Agent Miller testifying, the difference, the one date was April 18th. He testified that was a typographical error. That was backed up by the fact that the drug exhibits that were sent to the DEA lab listed May 14th on them, and the chemist testified to that. And he also was able to explain why there was an error on the April 6th date as well. And how about the Fifth Amendment violation here and the collaboration and, you know, violation and the cooperation of the U.S. Attorney's Office in this violation? Well, Your Honor, certainly the presence of an AUSA alone is not prosecutorial misconduct, although I understand Your Honor's concern completely. The only thing with respect to Miranda, Your Honor, and, again, it was in the briefs. It was briefed as a Doyle issue. And that's what we responded to. That's what I had come to argue today. If Your Honors would like further supplemental briefing on the Miranda issue, the government would be happy to provide that, but only with respect to the Doyle. And Doyle is the only case that is cited in the defendant's brief. And Doyle stands for one thing only, and that is when you induce silence, you can't refer to it afterward. And that's my response with respect to Miranda. If Your Honors would like further briefing, we certainly would be happy to do so. I don't believe so. Thank you, Your Honor. Thank you. We have Mr. Patrizio. We have three minutes. And if he would start with where the objection was made to the 8031 matter. Yes, Your Honor. On page 512A. And, Judge Cowen, you should have been there for the trial when you talk about what took place in the process. And what was said on page 512A? 512A. The court actually engaged me in conversation, telling me that I had a tendency to not want to view the entire picture. And then I say, because the court says to me, the entire picture, as far as this rule is concerned, is that the individual is perceiving the event, makes the recordation, but also can do so, quote, immediately thereafter. I then respond, I am saying that immediately thereafter is. It's perhaps the statement that he made immediately after the drug deal when he called Larry Brown. That's immediately thereafter. Not after you go back, break down the equipment, come back to DA, and do all those things, Judge. That's where it is. And then the second thing we asked you to talk about? Farmless error. Right. Well, I think Judge Cowen has hit the nail on the head, and I hate to go back and beat a dead horse about the Brady issue, but. If you want to rest on that, that's fine. He certainly did a pretty good job of making your case. But, Judge, more importantly, and things that Judge Cowen did not bring up. For instance. You mean he missed something? Only because I have lived with this, Judge. I have lived with this case for two and a half years. Special Agent Hughes testified. Well, when was your, or on redirect, April Bird brought out. When did you first have contact with Mr. Ortega Green? He said it was in, I believe, March of 2002. Then they realized that that was wrong, and they then go back and say, okay, it was November of 01. Then when they bring Miller on, they talk about the 18th. Every drug transaction. If I had had those discovery materials, I would have been able to demonstrate that Mr. Green was not available, was not even present for three of those transactions. The one transaction that Hughes testified about, he was not present, but it was a deceased agent. You've written on Brady, and you certainly have, you keep bringing it back, and obviously we'll go back and take a look at it. Because it's in that context. My point is, with all of the other evidence that showed that he was the person who was in on the buy, how is that harmless error? Not harmless error, I should say. Well, because really, Judge Ambrose, I believe this was maybe a conspiracy to distribute drugs. It was not indicted as that. It was one count, and the government knew their weaknesses of the other transactions. That's why they elected to proceed this way, I submit to you. Because that took away a lot of the inconsistencies that backed up the few, or the many, I believe. No, that's their prerogative, but we need to know about this particular case. This particular case, the evidence was scant. I brought out the videotapes, Your Honor. The government didn't produce it. They wanted to try this case in a little box with a 28-word conversation, allegedly by my client. And then they bring the agent on and says, I watched the transaction, and that was it. That was their whole case. I brought out the tapes in terms of not being able to see the various people, et cetera. That was part of the defense. I had to produce the confidential informant. I did that. When I tried to find out anything about when they brought things out about the history of the drug transactions, I can cite the specific page where I asked the judge for it. Even on recrossing, the judge cut me off when I wanted to go into, when Special Agent Hughes testified that he was wrong about the date. And the judge said, April Byrd objected. He is going beyond the limits. But we've got that, and you've made a good point on that, the point was harmless error. So if you want to do one summation point with regard to why this is not harmless error. Well, I believe, I believe that if you look at this entire record, and I could talk for an hour and I know we don't have that, that taken as a whole, this was a travesty of justice for this man. The government did not provide information. The government elected what they did. The evidence that they did present was far from clear, and I produced the CI. Just one last point, Your Honor. I believe the government in terms of the amendments to the crack guidelines that were in addition. Well, if you win on the conviction part, you don't have to worry about the sentencing part. Yes, sir. Thank you for that. And also I should note for the record, Mr. Kravitz, you were not trial counsel. We're noting that for the record. Okay. Thank you very much. Thank you to both counsel. We'll take the matter under advisement.